IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EVANDER J. MORRISSETTE,           )
                                  )
           Plaintiff,             )
                                  )
     v.                           )        CASE NO. 2:15-CV-275-MHT
                                  )
PHYLLIS BILLUPS, et al.,          )
                                  )
     Defendants.                  )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Evander J. Morrissette, a former state inmate. In this case, Morrissette challenges the constitutionality of force used against him on September 10, 2014 by Officer Willie T. Parham during a prior term of incarceration at the Bullock Correctional Facility.   Doc No. 1 at 5-13.[1] Morrissette names Parham, Warden Phyllis Billups and Warden Sandra Giles as defendants.   Morrissette seeks monetary damages for the alleged violation of his constitutional rights.  Doc. No. 1 at 14.

The defendants filed an answer, special report and supporting evidentiary materials, including affidavits and certified prions/medical records, addressing Morrissette's claim for relief.  In these documents, the defendants deny they acted in violation of Morrissette's

_____

[1]Morrissette identifies Willie T. Purham as a defendant.  However, the evidentiary materials submitted by the defendants establish that this defendant's true name is Willie T. Parham.  Based on the foregoing, the court entered an order on October 11, 2017 that Willie T. Parham be identified as the true name of this defendant (Doc. No. 35).  The court will refer to this officer by his correct name.

constitutional rights.  After receipt of the defendants' special report, the court issued an order on July 21, 2015 directing Morrissette to file a response to the report, including affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. No. 20 at 2.  The order specifically cautioned Morrissette that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. No. 20 at 2-3.

Morrissette filed a response and supporting affidavit in opposition to the defendants' report on September 17, 2015.  Doc. No. 24 and Doc. No. 24-1.  In this response, Morrissette seeks dismissal of his claims against defendants Billups and Giles because they are not responsible for the actions of defendant Parham.  Doc. No. 24 at 1.  The court construes this portion of Morrissette's response as a motion to dismiss his claims against defendants Billups and Giles.  In addition, pursuant to the July 21, 2015 order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment with respect to the claims lodged against defendant Parham.

With respect to the motion to dismiss filed by Morrissette, the court finds that this motion is due to be granted.  Moreover, upon consideration of the motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the

2

plaintiff's response in opposition to the report, the court concludes that the motion for summary judgment is due to be denied as to the Morrissette's allegations of excessive force lodged against defendant Parham in his individual capacity and granted in all other respects.

## II.  MOTION TO DISMISS

In his response filed to the defendants' report, Morrissette seeks dismissal of his claims against defendants Billups and Giles as these defendants "are not rightfully proper parties to these proceedings and cannot be held liable in § 1983 due to the doctrine of Respondeat Superior, accordingly they should be dismissed."  Doc. No. 24 at 1.   As previously discussed, the court has construed this request as a motion to dismiss and agrees with Morrissette's assertion that his claims against defendants Billups and Giles provide no basis for relief as the law is well-settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability]. . . .  *Robertson v. Sichel,* 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials

are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Consequently, the court concludes that Morrissette's motion to dismiss is due to be granted and his claims against defendants Billups and Giles be dismissed with prejudice. The court will henceforth proceed to address the excessive force claim presented against defendant Parham.

### III.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing

---

[2]Although Rule 56 underwent stylistic changes in December of 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324); *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

When the moving party meets its evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64 F.3d at 593-94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to

summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).

For summary judgment purposes, only disputes involving material facts are relevant.  *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Lofton v. Sec'y of the Dep't of Children & Family Serv.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Grp., Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary

judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).  A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's pro se status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After this review, the court finds that Morrissette, through the submission of his sworn complaint, his response in opposition to the defendant's special report and the supporting affidavit, has demonstrated a genuine dispute of material fact in

order to preclude entry of summary judgment on his excessive force claim against defendant Parham in this defendant's individual capacity.

## IV.  DISCUSSION

### A.  Absolute Immunity

To the extent Morrissette seeks relief from defendant Parham in his official capacity, Parham is immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, defendant Parham is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  Relevant Facts[3]

In the complaint, Morrissette provides the following recitation of facts:

> On September 10, 2014, at approximately 7:00 AM[,] Plaintiff's dormitory correctional officer announced "Institutional Gym Call."  While walking down the main hallway to the gym, Officer Willie T. Parham [exited] the Institutional Infirmary and engaged in a verbal exchange with the plaintiff.  The plaintiff informed [Parham] that he was on his way to the gym.  Parham ordered [Plaintiff] to return to his dormitory.  Plaintiff proceeded to return to his dorm. However, [Plaintiff] begin taunting Parham by referring to his order as "you ain't talking about shit."
>
> Plaintiff response initiated a heated verbal exchange with Parham. Plaintiff turn[ed] away from Parham again to proceed to his dormitory as ordered at which point Parham pushed [Plaintiff's] right shoulder to escort him from the main hallway.
>
> Plaintiff paused to address Parham, regarding the push, at which time, without warning, Parham used chemical spray against [Plaintiff] and [began] punching him repeatedly in his face, and jaw.  Plaintiff then fell to the floor, and Parham kicked him repeatedly.
>
> The [alleged] use of excessive force [by Parham] did not cease until other officers arrived to assist.
>
> Plaintiff was help[ed] to his feet and was escorted to the infirmary for examination of injuries, due to a substantial amount of blood proceeding from his mouth.  Plaintiff as a result of [the] force [used by Parham] received multiple injuries, including but not limited to, a broken jaw.

Doc. No. 1 at 12-13 (defendant's correct name utilized).

## C.  Use of Force

(i) <u>Qualified Immunity</u>.   With respect to Morrissette's claim of excessive force lodged against defendant Parham in his individual capacity, Parham argues he is entitled to qualified immunity.

---

[3]The facts are gleaned from the complaint.  At this stage of the proceedings, the facts are viewed in a light most favorable to Morrissette. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (When addressing a party's motion for summary judgment, all evidence "must be viewed in the light most favorable to the opposing party."); *Anderson*, 477 U.S. at 255 (In ruling on a summary judgment motion, "all justifiable inferences [from the evidence] are due to be drawn in [the non-movant's] favor.").

Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop* [*v. City of Atlanta*, 485 F.3d 1130, 1136-37 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell* [*v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)]. In Eighth Amendment excessive force cases, however, "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002).

*Bowden v. Stokely*, 576 F. App'x 951, 954-55 (11th Cir. 2014). "While . . . there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate. *See Skrtich*, 280 F.3d at 1301." *Bowden*, 576 F. App'x at 956. Accordingly, this court will consider whether the plaintiff's allegations that Parham maliciously and sadistically used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

(ii) <u>Excessive Force</u>. Claims of excessive force by correctional officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations

omitted).  With respect to the objective component, a plaintiff must show that "the alleged

wrongdoing was objectively harmful enough to establish a constitutional violation."  *Id*.

In addition, "the use of excessive physical force against a prisoner may constitute cruel and

unusual punishment [even] when the inmate does not suffer serious injury."  *Id*. at 4.

"Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately

counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue

an excessive force claim merely because he has the good fortune to escape without serious

injury."  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

> This is not to say that the "absence of serious injury" is irrelevant to the
> Eighth Amendment inquiry.  [*Hudson*, 503 U.S.] at 7, 112 S.Ct. (1992).
> "[T]he extent of injury suffered by an inmate is one factor that may suggest
> 'whether the use of force could plausibly have been thought necessary' in a
> particular situation."  *Ibid*. (quoting *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078.
> The extent of injury may also provide some indication of the amount of force
> applied.

*Wilkins*, 559 U.S. at 37.

> Under the Eighth Amendment, force is deemed legitimate in a custodial
> setting as long as it is applied "in a good faith effort to maintain or restore
> discipline [and not] maliciously and sadistically to cause harm."  *Whitley v.
> Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)
> (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also
> Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).
> To determine if an application of force was applied maliciously and
> sadistically to cause harm, a variety of factors are considered including: "the
> need for the application of force, the relationship between that need and the
> amount of force used, the threat reasonably perceived by the responsible
> officials, and any efforts made to temper the severity of a forceful response."
> *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321,
> 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  From
> consideration of such factors, "inferences may be drawn as to whether the
> use of force could plausibly have been thought necessary, or instead evinced
> such wantonness with respect to the unjustified infliction of harm as is

tantamount to a knowing willingness that it occur."  *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-01.

> "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]"

*Wilkins*, 559 U.S. at 38.  Thus, in an excessive force case such as the one at hand,

> the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights)."

*Bowden*, 576 F. App'x at 953.

Morrissette alleges that on September 10, 2014 at approximately 7:05 a.m. defendant Parham used excessive force against him.  In support of this claim, Morrissette contends that after he taunted Parham and engaged in a heated verbal exchange with him, Parham, without justification, used a chemical spray against him and punched/kicked him. Morrissette further alleges that after he assumed a defenseless position on the floor defendant Parham continued to repeatedly kick him.

Within a few minutes of the incident, a correctional officer escorted Morrissette to the health care unit for evaluation.  Nurse Paulette Perryman examined Morrissette, determined that he was in stable condition and decontaminated his eyes.  Doc. No. 19-3 at

29.  Nurse Perryman also observed that Morrissette had "bit[ten] the inside of his [right] jaw."  *Id*.  Nurse Perryman noted no other injuries and released Morrissette to correctional officials for his return to the dorm.  At 9:45 a.m., Morrissette returned to the health care unit complaining of right jaw pain.  Doc. No. 19-4 at 9.  During this visit to the health care unit, a nurse practitioner examined Morrissette and ordered he undergo a series of facial x-rays, the results of which indicated an acute fracture to Morrissette's right jaw.  *Id*.

Defendant Parham adamantly denies Morrissette's claim regarding the alleged use of excessive force.  Specifically, Parham addresses Morrissette's allegation as follows:

> On September 10, 2014, I was leaving the Health Care Unit when I observed inmate Evander Morrissette (B/275884) on the hallway outside the gym.  Gym call was over and I ordered Inmate Morrissette to report to his assigned dormitory.  Inmate Morrissette did not move and I yelled a second time for him to get off the hallway and return to his assigned dorm.  Inmate Morrissette again refused my order and instead looked at me and said, "You don't have to talk to me like that!"  I ordered Inmate Morrissette again to get off the hallway and return to his dormitory.  Inmate Morrissette said, "You ain't talking about shit."  I walked up to Inmate Morrissette and attempted to escort him by placing my hand on his shoulder when he knocked my hand off his shoulder.  I grabbed my chemical agent from my holster and yelled, "Gas!"  I then administered a two (2) second burst of saber red chemical spray while radioing "Code Red."  I took Inmate Morrissette down to the floor and attempted to handcuff him.  Inmate Morrissette refused to be handcuffed and started resisting.  I was wrestling with Inmate Morrissette when Officers Joseph McKinnes and Terrell Holcey responded to the code.  Officer Holcey grabbed Inmate Morrissette and tried to handcuff him, but Inmate Morrissette continued to resist.  Officer Holcey, who had run out of the gym to respond to the code, assisted Officer McKinnes in handcuffing Inmate Morrissette.  Inmate Morrissette was escorted to the Health Care Unit by Lt. Aundra Jackson who had also responded to the scene.  Inmate Morrissette was medically assessed and decontaminated.
>
> It took three correctional officers to handcuff Inmate Morrissette because he resisted the officers.  We used the least amount of force necessary.  This incident was investigated by Capt. Gwendolyn Babers who found the

> amount of force we used was justified. . . .  I have no knowledge of Inmate Morrissette's jaw being broken.
>
> Inmate Morrissette claims in his lawsuit that he complied with my order to get off the hallway and return to his dormitory; that is not true. Inmate Morrissette was ordered three times to leave the hallway and return to his dormitory; Inmate Morrissette refused.  When I tried to escort Inmate Morrissette to the dormitory, he knocked my hand off his shoulder and told me not to f------ touch him.  When Inmate Morrissette knocked my hand away, I sprayed him and took him down; on the concrete floor.  This incident occurred in the hallway where I had given Inmate Morrissette three direct orders to return to his dormitory.  Inmate Morrissette claims excessive force was used on him; this is not true.  It took three officers to get Inmate Morrissette handcuffed because he was kicking and resisting.

Doc. 19-2 at 1-2.

Even though defendant Parham disputes the version of events presented by Morrissette, the court is required at this stage of the proceedings to view the facts in the light most favorable to Morrissette and draw all reasonable inferences from those facts in his favor.  *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). In that vein, Morrissette provides that defendant Parham sprayed him with a chemical agent and repeatedly punched/kicked him without adequate reason or provocation and while he posed no threat to Parham or the security of the facility.  Finally, Morrissette contends that the challenged use of force caused him to suffer injuries, including a broken jaw.   As previously explained, defendant Parham denies Morrissette's allegations regarding the use of excessive force and maintains that at no time during the incident was more force used than necessary to subdue and gain control of Morrissette after he repeatedly refused orders to exit the hallway and report to his assigned dorm, concededly taunted Parham and knocked Parham's hand from his shoulder as Parham attempted to escort Morrissette from

the area.  Nevertheless, viewing the facts in the light most favorable to Morrissette, the court concludes that defendant Parham is not entitled to qualified immunity as Morrissette has alleged facts sufficient to survive the motion for summary judgment regarding the excessive force claim.  *See Skrtich*, 280 F.3d at 1301.  Specifically, disputed issues of material fact exist regarding the need for the use of force, the nature of the force used and whether defendant Parham acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment with respect to the claim of excessive force lodged against defendant Parham in his individual capacity is due to be denied.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The plaintiff's motion to dismiss be GRANTED and his claims against Phyllis Billups and Sandra Giles be DISMISSED with prejudice.

2.  Defendants Phyllis Billups and Sandra Giles be DISMISSED as parties to this cause of action.

3. Defendant Parham's motion for summary judgment with respect to the plaintiff's claim for monetary damages lodged against him in his official capacity be GRANTED and this claim be DISMISSED with prejudice as the defendant is entitled to absolute immunity from such damages.

4.  The motion for summary judgment filed on behalf of defendant Parham with respect to the plaintiff's excessive force claim lodged against this defendant in his individual capacity be DENIED.

5.  This case be set for a jury trial before the District Judge assigned this case on the plaintiff's surviving claim of excessive force against defendant Willie T. Parham.

On or before **August 9, 2018**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 26th day of July, 2018.


_____/s/   Wallace Capel, Jr._____
CHIEF UNITED STATES MAGISTRATE JUDGE